VILLAGE OF GAHANNA, APPELLEE, *v.* AMBURGEY, APPELLANT.

(No. 6993—Decided September 25, 1962.)

*Mr. James R. Butler*, law director, for appellee.
*Mr. B. N. Murray*, for appellant.

DUFFEY, P. J.   This is an appeal from a Common Pleas Court judgment affirming the appellant's conviction in the mayor's court of Gahanna, Ohio, of a violation of a traffic ordinance.

The record does not contain the original documents filed in this case.   There are copies of the documents, some certified by a "deputy clerk" and some not.   There are defendant's exhibits in the file, which are not included in the bill of exceptions as authenticated by the Mayor.   Nothing in the transcript of pro-

ceedings indicates that these exhibits were offered or received in the mayor's court.

A copy of the affidavit states that the defendant was operating his vehicle "at a speed of 54 M. P. H. in a 35 M. P. H. Zone." It does not specify the time of the alleged violation. The ordinance requires that an affidavit shall specify "the time, place, and the speed at which the defendant is alleged to have driven, and also the speed which this section declares shall be prima facie lawful at the time and place of such alleged violation." As to the content of the affidavit, compare *State* v. *Wall*, 115 Ohio App., 323.

The defendant filed a "Plea in Abatement." Cf. Section 2937.04, Revised Code. He refused to plead to the affidavit. Although there is some confusion in the record, it appears that the Mayor entered a plea of no contest. The proper entry would be a plea of not guilty. The trial proceeded forthwith, although no consent was given "expressly" or impliedly. See Section 2937.08, Revised Code.

However, the appellant's brief raises only one question of any significance. This is the contention that the thirty-five miles per hour prima facie speed relied upon in the affidavit is in conflict with Section 4511.21, Revised Code. This statute contains seven categories of prima facie limits and a provision for the establishment of specific exceptions. There is no evidence of the establishment of a specific thirty-five miles per hour zone, and that possibility is set aside. The applicable categories are (C) and (F). These read as follows:

"(C) Thirty-five miles per hour on all state routes or through highways within municipal corporations outside business districts, except as provided in paragraphs (D) and (F) of this section;"

"(F) Fifty miles per hour on state routes within municipal corporations outside urban districts unless a lower prima facie speed is established as further provided in this section."

An "urban district" is defined in Section 4511.01 (NN), Revised Code:

" 'Urban district' means the territory contiguous to and including any street or highway which is built up with structures devoted to business, industry, or dwelling houses situated at intervals of less than one hundred feet for a distance of a

quarter of a mile or more, and the character of such territory is indicated by official traffic control devices.''

Under the statutory provisions an urban district territory is ''built up'' when:

1. It contains structures which are devoted to business, industry or dwelling house uses.

2. These structures must be situated at intervals of less than one hundred feet.

3. The intervals so built upon must be an aggregate distance of a quarter of a mile or more.

4. The character of the territory must be indicated by official traffic control devices.

Defendant, appellant herein, was traveling north and, therefore, was on the east side of Hamilton Road. The east frontage was admittedly not built up with such structures, nor at the required intervals, nor for the required distance. The west side did have such structures. With the exception of one vacant lot, the intervals between structures were testified to be less than one hundred feet, and the aggregate distance to be over one quarter of a mile. The vacant lot, which could not qualify under the structure-interval requirement, was on the corner at the beginning of the area and, therefore, was not necessary to the aggregate distance requirement.

Section 4511.01 (NN), Revised Code, defines the territory of an urban district as that ''contiguous to and including any street or highway.'' In paragraph (Z) ''street or highway'' is defined as the entire width between the boundary lines of the way. In our opinion the ''territory'' of an urban district must include the frontage on both sides of the street, and this territory must be built up as outlined above. In this connection a comparison should be made with the definition of the ''territory'' of a ''business district'' and a ''residence district.'' Section 4511.01 (LL) and (MM), Revised Code. Accordingly, under the facts here the area was not shown to be an urban district and the statutory limitation was fifty miles per hour pursuant to Section 4511.21 (F), Revised Code. Since the affidavit was based upon a thirty-five miles per hour prima facie speed limit, it cannot stand.

Counsel for the village suggests many horrendous things will happen if we so hold. Such matters are legally significant

108

in statutory interpretation where the statute is ambiguous. Where the statute is not ambiguous these arguments go to the wisdom (or draftsmanship) of the legislation. In our opinion the statute is not ambiguous either in the definition of the territory of an urban district, or in the specific criteria for determining whether that territory is "built up."

Nor can we accept the proposition that the suggested horrendous things will be true. Section 4511.21, Revised Code, provides that if the local authorities believe a statutory limit is greater than is reasonable and safe, they may apply to have it reduced. To achieve a reasonably uniform system and prevent the chaos of over six hundred different systems in a highly mobile society, the Legislature is entitled to establish basic rules, and provide an administrative method of varying those rules where conditions justify an exception. If Gahanna can justify its belief that fifty miles per hour in this area is unsafe, its remedy is clear.

The judgments of the Common Pleas Court of Franklin County and of the Gahanna mayor's court are reversed, and a judgment of dismissal will be entered for defendant.

*Judgment reversed.*

DUFFY and BRYANT, JJ., concur.